RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2002 FED App. 0002P (6th Cir.)
File Name: 02a0002p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

BENJAMIN TRAVIS
RISBRIDGER,
  *Plaintiff-Appellee,*

   No. 00-2471

  *v.*

LAWTON CONNELLY, Chief of
Police, City of East Lansing,
in his Official and Individual
Capacities; SHEREIF FADLY, a
police officer of the City of
East Lansing, in his individual
capacity,
  *Defendants-Appellants,*

CITY OF EAST LANSING, a
Municipal Corporation,
  *Defendant.*

Appeal from the United States District Court
for the Western District of Michigan at Lansing.
No. 99-00130—Gordon J. Quist, District Judge.

Argued: November 27, 2001

Decided and Filed: January 4, 2002

1

Before:  GUY and BOGGS, Circuit Judges; CARR, District Judge.[*]

---

**COUNSEL**

---

**ARGUED:** Mary Massaron Ross, PLUNKETT & COONEY, Detroit, Michigan, for Appellants.  Dorean M. Koenig, THOMAS COOLEY LAW SCHOOL, Lansing, Michigan, Michael J. Steinberg, AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN, Detroit, Michigan, for Appellee.  **ON BRIEF:** Mary Massaron Ross, PLUNKETT & COONEY, Detroit, Michigan, for Appellants.  Dorean M. Koenig, THOMAS COOLEY LAW SCHOOL, Lansing, Michigan, Michael J. Steinberg, AMERICAN CIVIL LIBERTIES UNION FUND OF MICHIGAN, Detroit, Michigan, for Appellee.

---

**OPINION**

---

   RALPH B. GUY, JR., Circuit Judge.  Defendants Lawton Connelly, Chief of Police for the City of East Lansing, and Shereif Fadly, an East Lansing police officer, appeal from the entry of partial summary judgment and the district court's decision to deny them qualified immunity with respect to the plaintiff's Fourth and Fourteenth Amendment claims brought under 42 U.S.C. § 1983.  Officer Fadly stopped plaintiff, Benjamin Risbridger, based on reasonable suspicion that he was involved in an assault and battery, and asked Risbridger for his identification.  When Risbridger adamantly refused, Fadly arrested him for hindering or obstructing an officer in the discharge of his duties in violation of a city ordinance.

---

[*] The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

*of Jacksonville*, 405 U.S. 156 (1972) (general vagrancy statute void for vagueness).[8]

In contrast, § 9.102(19) does not criminalize the refusal to provide identification upon request, or make it unlawful to fail to provide "satisfactory" or "verifiable" identification in the absence of standards for determining what identification would suffice. Rather, it is the hindering or obstructing of an officer in the performance of his duties that constitutes a misdemeanor. Taking care to examine the ordinance as applied in this case, a reasonable person would understand that if he refuses an officer's request for identification after being pointed out to that officer by another citizen, his conduct may "hinder or obstruct" the officer in the discharge of his duties. Apart from the question of notice, the city's ordinance does not afford an officer the same kind of unrestrained discretion as the credible-and-reliable identification requirement at issue in *Kolender*. We conclude that a reasonable officer would not have known that the ordinance would be found to be unconstitutionally vague as applied in this situation.

Accordingly, the district court's denial of qualified immunity to Connelly and Fadly with respect to plaintiff's Fourth and Fourteenth Amendment claims is **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.

---

[8]See also *Chicago v. Morales*, 527 U.S. 41 (1999), in which the Court declared Chicago's Gang Congregation Ordinance to be unconstitutionally vague on its face because the entire ordinance (1) failed to give ordinary citizens fair notice of what was forbidden and what was permitted conduct, and (2) failed to establish minimum guidelines to govern law enforcement. The ordinance provided that if an officer reasonably believed that at least one of two or more persons was loitering "with no apparent purpose," the officer must order all of them to disperse and anyone who disobeyed the order would be guilty of violating the ordinance.

The misdemeanor case against Risbridger was ultimately dismissed and this civil action followed.

After a review of the record and the arguments presented on appeal, we find the individual defendants are entitled to qualified immunity and reverse the entry of partial summary judgment in favor of plaintiff on his Fourth and Fourteenth Amendment claims against them.

## I.

The material facts are undisputed. At approximately 2:30 a.m. on November 30, 1997, Officer Fadly was called to the 300 block of M.A.C. Street to assist Officers Phillips and Blanck after they stopped two males who were acting suspiciously. These individuals told Officer Phillips that they had witnessed a fight in the alley. As they continued to be questioned, plaintiff and his brother walked by and one of the witnesses identified plaintiff as having been involved in the fight. As a result, Officer Fadly approached plaintiff and asked to see his identification. Plaintiff answered: "No. What for?" Officer Fadly informed plaintiff that he was investigating a fight and that a witness had pointed him out. Officer Fadly asked again for plaintiff's identification and warned that he could be arrested if he refused. Plaintiff refused and was arrested.[1]

Plaintiff was charged with disorderly conduct under EAST LANSING, MICHIGAN, CODE, Title IX, Ch. 108, § 9.102(19), which makes it a misdemeanor to "[a]ssault, obstruct, resist, hinder, or oppose any member of the police force . . . in the discharge of his/her duties as such." In Michigan, an officer may make a warrantless arrest of a person who commits a

---

[1]Plaintiff states that Officer Fadly did not tell him he was investigating a fight until after arresting plaintiff. This dispute is not material to the claims at issue because plaintiff concedes that Fadly had reasonable suspicion that would justify a *Terry* stop. *Terry v. Ohio*, 392 U.S. 1 (1968). In addition, plaintiff conceded that he knew he had been pointed out to the officer.

misdemeanor in the officer's presence.  MICH. COMP. LAWS ANN. § 764.15(1)(a).[2]  After arriving at the police station, plaintiff identified himself and related that he had encountered the two "witnesses" in a bar just before they were escorted out by the bartender.  Plaintiff was booked on the ticket for hindering or obstructing an officer and released on bond at approximately 6:00 a.m.  He was not questioned any further about the assault.

Risbridger filed a motion to dismiss the misdemeanor ticket for hindering or obstructing an officer on constitutional grounds.  After a hearing in May 1998, the state court judge rejected Risbridger's First Amendment overbreadth challenge but found that the arrest was invalid because Risbridger was free to decline to speak to Officer Fadly.  Following that ruling, the city decided not to prosecute the ticket and an order of *nolle prosequi* was entered.

In November 1999, plaintiff sued Officer Fadly, Chief Connelly, and the City of East Lansing.  Plaintiff alleged violations of his federal and state constitutional rights and asserted several state law claims.  Defendants filed a joint motion to dismiss or for summary judgment, based in part upon qualified immunity, with respect to all of the claims.  Plaintiff moved for partial summary judgment in his favor on the § 1983 claims, only.  On October 31, 2000, the district court (1) granted the defendants' motion with respect to plaintiff's free speech claims brought under both the federal and state constitutions; (2) denied defendants' motion with respect to all other claims; and (3) granted partial summary judgment in favor of plaintiff on his Fourth and Fourteenth Amendment claims. *See Risbridger v. Connelly*, 122 F. Supp. 2d 857 (W.D. Mich. 2000).  The individual defendants appealed.

---

[2]It is agreed that state law would not have authorized Officer Fadly to arrest plaintiff for the alleged assault, even if there was probable cause to believe plaintiff was involved, because the assault was not committed in the presence of an officer.  *See* MICH. COMP. LAWS ANN. § 764.15.

no controlling precedent that this ordinance was or was not constitutional, and hence the conduct observed violated a presumptively valid ordinance.  A prudent officer, in the course of determining whether respondent had committed an offense under all the circumstances shown by this record, should not have been required to anticipate that a court would later hold the ordinance unconstitutional.

Police are charged to enforce laws until and unless they are declared unconstitutional.  The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.  Society would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement.

*Id*. at 37-38.  After examining the Court's reasoning in *Kolender*, we cannot conclude that a reasonable officer would have known that plaintiff's arrest for hindering and obstructing an officer by refusing to provide identification in this situation would violate due process.

In *Kolender*, the Court explained that the California statute at issue was not simply a "stop and identify" statute but, rather, one that required anyone stopped based on reasonable suspicion to provide "credible and reliable" identification that would give reasonable assurance of authenticity and a means for getting in touch with the person later.  461 U.S. at 352.  Because a person would be in violation of the statute unless the officer was satisfied that the identification was reliable, the statute conferred virtually unrestrained discretion to arrest.  The statute was found to be unconstitutionally vague *on its face* because it encouraged arbitrary enforcement by failing to describe with sufficient particularity what a suspect must do in order to satisfy the statute.  *See also Papachristou v. City*

Comparing this case to the "stop and identify" ordinance that was found to be unconstitutionally vague in *Kolender*, the district court concluded:

> Ordinance 9.102(19) goes beyond *Kolender* because nothing in the language of the ordinance informs a person of average intelligence that he or she may be required to provide identification to a police officer upon request.  If refusing to produce identification violates Ordinance 9.102(19), so would refusing to provide an address, a telephone number, a birth date, an explanation for one's presence and behavior, and so on.  Moreover, there are no guidelines on whether the identification requirement is to be enforced at the beginning of the detention or at the end, after the officer has asked his questions.

Without specifically addressing the individual defendants' liability, the district court found that the hindering or obstructing ordinance was unconstitutionally vague as applied to the plaintiff.  We find qualified immunity bars plaintiff's due process claims against Officer Fadly and Chief Connelly.[7]

The Supreme Court's discussion in *DeFillippo* is instructive.  *Michigan v. DeFillippo*, 443 U.S. 31 (1979), *rev'g People v. DeFillippo*, 262 N.W.2d 921 (Mich. App. 1977).  There, the Court held that an arrest based on probable cause and made in good-faith reliance on a presumptively valid ordinance is valid regardless of a subsequent judicial determination of its unconstitutionality.  443 U.S. at 33.  The Court explained that at the time of the arrest, there was abundant probable cause and

---

[7]Recognizing that Chief Connelly did not actually participate in the arrest, plaintiff brought a claim for supervisory liability against Connelly in his individual capacity for having implicitly authorized or knowingly acquiesced in the unconstitutional conduct of Officer Fadly.  *See Taylor v. Mich. Dept. of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995).  Although plaintiff also sued Connelly in his official capacity, claims of municipal liability are not before us.

**II.**

A district court's decision rejecting an individual defendant's claim to qualified immunity is immediately appealable to the extent that it raises a question of law, notwithstanding the absence of a final judgment.  *Behrens v. Pelletier*, 516 U.S. 299, 310-11 (1996); *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).  Since the issues in this case do not turn on which facts the parties may be able to prove, we have jurisdiction over this appeal.  *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999) (*en banc*).  Our review of the denial of qualified immunity is *de novo*.  *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999), *cert. denied*, 528 U.S. 1136 (2000).

"[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  We have articulated a three-part inquiry for evaluating a defendant's entitlement to qualified immunity, which asks (1) whether the facts taken in the light most favorable to plaintiff could establish a constitutional violation; (2) whether the right was a "clearly established" right of which any reasonable officer would have known; and (3) whether the official's actions were objectively unreasonable in light of that clearly established right. *Williams*, 186 F.3d at 691.

The right must be defined at the appropriate level of specificity to determine whether it was clearly established at the time the defendants acted.  *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).  This means that to be "clearly established" the contours of the right must be sufficiently clear so that a reasonable official would understand that what he is doing violates that right.  *Id.  See also Dominique v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987).  A right is clearly established if there is binding precedent from the Supreme Court, the Sixth

Circuit, the district court itself, or other circuits that is directly on point. *Blake*, 179 F.3d at 1007. "'This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" *Wilson*, 526 U.S. at 615 (quoting *Anderson*, 483 U.S. at 640).

## A.   Fourth Amendment

Plaintiff's Fourth Amendment claim rests not on the stop, which he concedes was lawfully based on objectively reasonable suspicion consistent with *Terry*; but, rather, on his arrest for hindering or obstructing an officer in the discharge of his duties by refusing to provide identification. Nor does plaintiff seriously challenge the existence of probable cause to believe the ordinance was violated by his refusal to identify himself. When Officer Fadly approached plaintiff based on at least reasonable suspicion that an assault had occurred and that plaintiff was involved, he had probable cause to believe plaintiff was hindering or obstructing an officer in the discharge of his duties by refusing to identify himself.[3]

---

[3]Relying by analogy on Michigan's resisting and obstructing statute, defendants argued that there was probable cause to believe that plaintiff had violated the city's hindering and obstructing ordinance. Defendants cite two cases in which convictions under Michigan's resisting and obstructing statute were affirmed: (1) for politely refusing to comply with a search warrant authorizing a blood test, *People v. Philabaun*, 602 N.W.2d 371 (Mich. 1999); and (2) for giving a false name to an arresting officer, *People v. Vasquez*, 612 N.W.2d 162 (Mich. App. 2000). During the pendency of this appeal, the Michigan Supreme Court reversed *Vasquez* and held that the statute, which makes it unlawful to "obstruct, resist, oppose, assault, beat or wound" an officer performing his duties, must be interpreted to proscribe only actual or threatened physical interference with an officer. *People v. Vasquez*, 631 N.W.2d 711, 714 (Mich. 2001). Unlike the Michigan statute, however, the language of the city's ordinance, which makes it unlawful to assault, obstruct, resist, hinder or oppose an officer, does not as a whole imply that physical interference is required to establish a violation. It is also significant that we are not asked to determine whether there was sufficient evidence to support a conviction, but only whether there was probable cause at the

*States v. Butler*, 223 F.3d 368, 374 (6th Cir. 2000) (detention based on reasonable suspicion matured into full-fledged arrest without probable cause); *United States v. Obasa*, 15 F.3d 603, 607 (6th Cir. 1994) (arrest without probable cause exceeded bounds of *Terry* stop). Three other circuits, on the other hand, have held that a right to refuse to identify oneself during a valid *Terry* stop was not clearly established for purposes of qualified immunity. *See Oliver v. Woods*, 209 F.3d 1179, 1189-90 (10th Cir. 2000); *Albright v. Rodriguez*, 51 F.3d 1531, 1537-38 (10th Cir. 1995); *Gainor v. Rogers*, 973 F.2d 1379, 1386 n.10 (8th Cir. 1992); *Tom v. Voida*, 963 F.2d 952, 959 & n.8 (7th Cir. 1992).

Given the Supreme Court's express reservation of the question of whether a Fourth Amendment right to refuse to provide identification during a valid *Terry* stop renders invalid an arrest that is based on probable cause to believe the individual has violated a presumptively valid state or local law, as well as the lack of clear precedent from our circuit, we join the Seventh, Eighth, and Tenth Circuits and find that the contours of such a right were not sufficiently clear that the unlawfulness of plaintiff's arrest must have been apparent at the time. Accordingly, Officer Fadly and Chief Connelly are entitled to qualified immunity with respect to plaintiff's Fourth Amendment claims.

## B.   Due Process

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender*, 461 U.S. at 357 (citations omitted). Plaintiff mounted an "as applied" challenge to the ordinance, which requires that we determine whether it is unconstitutionally vague as applied to the specific facts of this case. *See United States v. Hill*, 167 F.3d 1055, 1063 (6th Cir. 1999).

probable cause to arrest for hindering or obstructing an officer in the discharge of his duties.[5]

Among the circuit courts, only the Ninth Circuit, continuing to adhere to its decision in *Kolender*, has explicitly held that an arrest under state law for failure to identify oneself during a valid *Terry* stop violates the Fourth Amendment. *See Martinelli v. City of Beaumont*, 820 F.2d 1491 (9th Cir. 1987). One Eleventh Circuit decision, relied on by the district court, construed a Georgia statute to prohibit only lying about one's identity. The court concluded that refusing to provide identification — which the defendants were entitled to do — did not provide probable cause to believe they had actually used false names. As a result, the court suppressed the fruits of the search incident to arrest. *See United States v. Brown*, 731 F.2d 1491, 1494, *vacated in part on other grounds*, 743 F.2d 1505 (11th Cir. 1984).[6]

While this court has quoted *Berkemer*, we have not addressed the specific right at issue here. *See, e.g., United*

---

[5]Nor was the question addressed in *Illinois v. Wardlow*, 528 U.S. 119 (2000), in which the court found that a suspect's unprovoked flight from police may in some circumstances create reasonable suspicion that would justify a *Terry* stop. In another recent decision, the Court held that the Fourth Amendment reasonableness requirement does not preclude warrantless arrest for minor misdemeanor offenses as long as the officer has probable cause to believe that the individual committed an offense in his presence. *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001) (seatbelt offense punishable by a fine only). Because the right must have been clearly established at the time the officer acted in order to defeat the claim to qualified immunity, we do not discuss the reasoning of these cases.

[6]The district court also relied on a few district court and state appellate court decisions subscribing to the view that an arrest for refusal to identify oneself during a *Terry* stop would be unconstitutional. *See, e.g., Timmons v. City of Montgomery*, 658 F. Supp. 1086, 1093 (M.D. Ala. 1987) (agreeing with the Ninth Circuit and Justice Brennan's concurrence in *Kolender*, court would find arrest under vagrancy statute would violate the Fourth Amendment); *City of Pontiac v. Baldwin*, 413 N.W.2d 689, 691 (Mich. App. 1987) (person refusing to cooperate with officer during *Terry* stop cannot be prosecuted for obstructing an officer).

---

Instead, plaintiff argues that although Officer Fadly was entitled to *ask* for his identification, it violated his Fourth Amendment rights to subject him to criminal sanctions for refusing to provide identification during a valid *Terry* stop. The genesis of the right of which plaintiff claims the defendants should have known is found in the following passage from Justice White's concurrence in *Terry v. Ohio*, 392 U.S. 1 (1968):

> There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way. However, given the proper circumstances, such as those in this case [involving reasonable suspicion], it seems to me the person may be briefly detained against his will while pertinent questions are directed to him. Of course, the person stopped is not obligated to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation.

392 U.S. at 34 (White, J., concurring). While this concurrence has been quoted and cited with approval in other Supreme Court decisions, those cases did not resolve the question presented here. *See, e.g., Florida v. Royer*, 460 U.S. 491, 497-98 (1983) (during a consensual police-citizen encounter, an individual may decline to answer questions and his refusal to answer does not, without more, furnish reasonable suspicion); *Dunaway v. New York*, 442 U.S. 200,

---

time of the arrest to believe the city's ordinance had been violated. Finally, plaintiff emphasizes that the lead opinion in *Vasquez* relied on the district court's decision in this case to support its interpretation of the Michigan statute. That is, if one cannot be compelled to answer questions posed by a police officer, it is problematic to interpret the statute in such a way that one may violate it by exercising a constitutional right. *Id.* at 717 n.3. This reference, however, does not pertain to the question of probable cause or establish that a constitutional right was clearly established at the time of plaintiff's arrest.

210 n.12 (1979) (custodial interrogation based on less than probable cause violates the Fourth Amendment).

In fact, the Supreme Court has expressly left open the question of whether it violates the Fourth Amendment to punish an individual for violating state or local laws by refusing to identify himself during a lawful *Terry* stop. *Brown v. Texas*, 443 U.S. 47 (1979), involved a conviction under a Texas statute that made it a crime for a person to refuse to give his name and address to an officer who lawfully stopped him. The detention and arrest under that statute was held to violate the Fourth Amendment because the officers lacked any reasonable suspicion to believe the defendant was engaged or had engaged in criminal conduct. *Id.* at 53. The Court specifically indicated that it "need not decide whether an individual may be punished for refusing to identify himself in the context of a lawful investigatory stop which satisfies Fourth Amendment requirements." *Id.* at 53 n.3.[4]

In *Kolender v. Lawson*, 461 U.S. 352 (1983), the plaintiff asserted constitutional challenges to a California statute that required persons who loitered or wandered on the streets to provide "credible and reliable" identification and account for their presence when asked by an officer under circumstances that would justify a *Terry* stop. The Supreme Court found the statute was unconstitutionally vague because it failed to clarify what would satisfy the "credible and reliable identification" requirement. Although the Ninth Circuit also concluded that the statute violated the Fourth Amendment, the Supreme Court found it unnecessary to decide the issue. *Id.* at 361 n.10. Thus, the Court again left the issue open despite a separate concurrence by Justice Brennan articulating

---

[4]In *Michigan v. DeFillippo*, 443 U.S. 31 (1979), *rev'g People v. DeFillippo*, 262 N.W.2d 921 (Mich. App. 1977), decided the same day as *Brown v. Texas*, the Court assumed a right to refuse to answer questions but reversed the state court's suppression of evidence that was seized as a result of a search incident to arrest for refusing to identify oneself. Notably, the dissent would have found that the arrest exceeded the bounds of the Fourth Amendment. *Id.* at 41-46 (Brennan, J., dissenting).

his view that the statute violated the Fourth Amendment by making it a crime to refuse to provide identification during a *Terry* stop. *Id.* at 362-69 (Brennan, J., concurring).

The district court in this case found the discussion of a typical *Terry* stop in *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984), to be particularly significant. The issue in that case was whether, and if so when, an individual detained during a roadside traffic stop must be advised of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). Viewing the usual traffic stop as analogous to a *Terry* stop, the court explained that the stop and inquiry must be reasonably related in scope to the justification for their initiation.

> Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. *But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released.* The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda*. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not "in custody" for the purposes of *Miranda*.

*Berkemer*, 468 U.S. at 439-40 (emphasis added) (footnotes omitted). Citing the *Terry* concurrence, the Court in *Berkemer* restated the general law concerning investigative detentions but made no attempt to resolve the question of whether a detainee may be arrested when the failure to provide identification during a lawful *Terry* stop creates