Francine HUMES, et al. Plaintiffs–Appellees,

v.

A.C. GILLESS, Individually and in his capacity as Sheriff of Shelby County, Tennessee, et al., Defendants,

Harry C. Scott, Individually and in his capacity as an Officer for the Shelby County Jail and Sheriff's Department, Defendant–Appellant.

Nos. 03–5630, 03–5631, 03–5632.

United States Court of Appeals, Sixth Circuit.

Aug. 10, 2004.

Mark A. Allen, Provost & Umphrey, Memphis, TN, for Plaintiffs–Appellees.

Heather W. Fletcher, James M. Simpson, Allen, Scruggs, Sossaman, Thompson, Simpson & Lillie, Memphis, TN, for Defendant–Appellant.

Before RYAN and COOK, Circuit Judges; and CLELAND, District Judge.*

COOK, Circuit Judge.

Jailers at Shelby County Jail spent between ten and thirty minutes believing that they were held hostage by two gun-

* The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

men who had taken over the jail's second-floor control room. Unknown to them, their superiors planned the mock takeover as a training exercise designed to test the security of the jail. The jailers who were in the control room, along with others subjected to the mock takeover, sued the officers who planned and carried out the exercise, claiming violations of various state and federal laws, including the Fourth Amendment prohibition against unreasonable seizures. Defendants, asserting qualified immunity, moved for summary judgment on plaintiffs' Fourth Amendment claims, brought under 42 U.S.C. § 1983. The district court denied the motions, ruling that genuine issues of material fact precluded the court from determining whether the officials' conduct violated plaintiffs' constitutional rights. But even taking as true all of the facts plaintiffs allege, we find that plaintiffs have failed to show that a reasonable person in the officials' position would have been on notice that his actions violated clearly established law. We therefore reverse the district court's denial of defendants' motions for summary judgment.

I

A. Factual Background

At the request of Chief Hopkins, Eddie Dowdy, the Shelby County Jail's Security Commander, asked two deputy-jailers-in-training, Harry Scott and Bobby Ervin, to test the security of the jail's second floor by attempting to take over the control room. Dowdy gave Scott and Ervin a fake gun and instructed them to make the training exercise seem as real as possible but cautioned them not to touch anyone inside the control room.

Scott and Ervin agreed to participate in the exercise. They dressed as computer repairmen, and prison officials allowed them to pass through first-floor security. They then followed a jailer into the second floor's control room. Once inside, Ervin, wielding the fake gun and using abusive language, ordered Officers Francine Humes, Catherine Lacy, and Geraldine Harvey to the floor. Neither these officers nor the other jailers on the second floor knew that Scott and Ervin only were impersonating gunmen.

According to Scott and Ervin, the exercise was supposed to last only a matter of seconds; once they took control of the room, Dowdy was to signal them to end the scenario. Dowdy, however, did not signal Scott and Ervin to stop at the appointed time, instead allowing the exercise to continue for perhaps as long as thirty minutes after Scott and Ervin entered the control room. During this time, Ervin ordered Humes to show him how to operate the panel controlling the cell doors, and he announced over the loudspeaker that he would open the doors if "Q–Dog" (a fictitious inmate) was not released. Other jailers on the second floor witnessed the events unfolding in the control room and believed the hostage scenario to be real. Two of these jailers called family members, reporting that inmates were going to kill them. Ervin reinforced his threats by allegedly pointing the gun at jailers both inside and outside the control room. Meanwhile, Scott removed the shoes of jailers inside the control room, and when Lacy tried to hide under a desk, he dragged her from beneath it.

B. Procedural Background

The jailers filed this suit against Scott, Ervin, and various other Shelby County employees,[1] individually and in their offi-

1. A.C. Gilless, Sheriff of Shelby County; Mar-     ron Hopkins, Chief Jailer; Don Wright, Chief

cial capacities, alleging unlawful seizure in violation of the Fourth Amendment and Tennessee's Constitution; due process and liberty interest violations of the Fourteenth Amendment and the Tennessee Constitution; and assault, battery (of the jailers in the control room), intentional infliction of emotional distress, and false imprisonment in violation of state law. The district court dismissed plaintiffs' Fourteenth Amendment allegations; granted Scott and Ervin summary judgment on plaintiffs' claims of false imprisonment, assault and battery, and private claims under the Tennessee Constitution; denied summary judgment as to plaintiffs' claims for intentional infliction of emotional distress and Fourth Amendment violations; and denied qualified immunity to all defendants. Defendants appeal only the denial of qualified immunity from plaintiffs' Fourth Amendment claims.

## II

### A. Jurisdiction

Appellate courts generally may review only district courts' final orders. *Crockett v. Cumberland Coll.*, 316 F.3d 571, 578 (6th Cir.2003). This court has jurisdiction, however, under 28 U.S.C. § 1291 to review "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Thus, we may review "the legal question of qualified immunity, i.e., whether a given set of facts violates clearly established law." *Mattox v. City of Forest Park*, 183 F.3d 515, 519 (6th Cir. 1999).

The district court denied defendants' motions for qualified immunity based on its finding that the question of immunity was "completely dependent upon which view of the facts is accepted by the trier of fact," noting the testimonial discrepancies as to whether Ervin pointed the fake gun at anyone and how, if at all, Ervin or Scott touched the officers in the control room. (Slip Op. at 11.) While we lack jurisdiction to review the district court's finding that factual discrepancies exist, we do have jurisdiction to review the legal question whether, accepting as true plaintiffs' version of the facts, plaintiffs have established that any reasonable officer given the orders that Dowdy gave Ervin and Scott would have known that his actions violated clearly established law.

### B. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The plaintiffs bear the burden of proving the existence of a clearly established constitutional right. *Rich v. City of Mayfield Hts.*, 955 F.2d 1092, 1095 (6th Cir.1992). "A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir.2002). For precedent to be "directly on point," it need not involve the unlawfulness of the very action in question, but the unlawfulness of the

Deputy; Robert Harper, Assistant Chief Deputy; Mary Peete, Inspector for the Shelby County Sheriff's Department; Roy Rodgers, Inspector; Eddie Dowdy, Security Commander; Mary Wilson, Captain and Shift Commander; Calvin Ester, Lieutenant and Instructor; C.W. Jones, Lieutenant; Neil Shea, Training Director; and Monte Hunt, Lieutenant and Instructor.

action must be apparent in light of the pre-existing law. *Id.* In *Anderson v. Creighton,* the Supreme Court explained the right must have been "clearly established" in a "particularized" sense and "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right" at the time of the incident. 483 U.S. 635, 639–640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *see also Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").

We have no difficulty in assuming that defendants' actions violated plaintiffs' Fourth Amendment right to be free from unreasonable seizures. Plaintiffs, however, have failed to establish that any reasonable officer would have understood that his actions would violate that right under the circumstances of this case. *Risbridger,* 275 F.3d at 569. While plaintiffs cite Supreme Court precedent establishing that for Fourth Amendment purposes, a seizure occurs when a person reasonably believes that she is not free to leave, plaintiffs have failed to cite any case, statute, rule, regulation, or other authority that would have put the officers in this case on notice that by conducting a training exercise that interfered with other officers' freedom of movement, they were unreasonably seizing the other officers. *Cf. Hope v. Pelzer,* 536 U.S. 730, 742, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2000) (finding that an Alabama Department of Corrections regulation and a Department of Justice report, in addition to Eleventh Circuit precedent, put Alabama prison guards on notice that chaining inmates to a "hitching post" would violate the Eighth Amendment). Though Defendants' actions might support a claim of unreasonable seizure, such a claim was (and is) not clearly established with respect to this law enforcement training situation. Accordingly, we find that defendants are entitled to summary judgment on the basis of qualified immunity. *Katz,* 533 U.S. at 202 ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."); *see also Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (holding that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

### III

We reverse the district court's judgments denying defendants qualified immunity from plaintiffs' Fourth Amendment claims and grant defendants' motions for summary judgment.