CLAY, Circuit Judge,
dissenting.
The key issue in this case is not whether it was reasonable for Officer Bland to chase Babb and Lee at high speeds; nor whether it was reasonable for him to have his gun drawn as he exited his car once the chase was over. The key issue in the case — the one that warrants a trial and the one the majority entirely ignores — is whether it was reasonable for Bland to charge full-speed at Lee with his gun drawn, giving Lee no meaningful chance to submit to his authority, and to continue at full-speed upon arriving at the passenger window, plunging into the passenger compartment, gun still in hand. After reading the majority opinion, one would not imagine that this is in fact what occurred. The only reason I am able to recount the event as it actually happened is because I have seen the videotape that recorded it for posterity — a videotape no jury will see. The majority has treated this case so cavalierly that justice has escaped. I therefore dissent.
I.
The majority’s discussion of the facts reads like Defendants’ brief. I shall state here what the videotape shows. It was only 2.5 seconds from the moment Bland exited his car to the moment the gun fired. The videotape shows Bland cross the approximately 10-foot distance between his car and the passenger side of Babb’s car at a fast pace with the gun aimed directly at the passenger compartment in which Lee was sitting. Bland was advancing towards Lee for the duration of the encounter; he did not stop even briefly and attempt to instruct Lee to exit Babb’s car from a covered, or at least more distant, position. Instead, Bland immediately exited his car, drew his gun, warned Lee to come out with his hands up, and without waiting even a moment for a response, charged ahead. Bland could not see Lee’s hands, so he did not know whether Lee was armed.
*468 Bland did not slow down once he got to Lee’s position; with his gun still pointed directly at Lee, he plunged through the open passenger window. The gun fired, killing Lee instantly and severing a portion of Bland’s hand. At his deposition, Bland testified that he did not know why he elected to reach through the window in an effort to remove Lee, nor why he approached Lee so rapidly. In response to a question from Plaintiffs counsel, Bland suggested it would have been “very possible” to remove Lee from the car by way of the open passenger window. Bland also could not say why he kept his gun pointed at Lee as he plunged into the open passenger window.
The record includes testimony from Bland’s superior, Elizabethtown police chief Rueben Gardner, and an expert retained by Plaintiff. Both witnesses testified that various of the decisions Bland made after the chase ended — in particular, the decision to charge at Lee immediately rather than taking cover and giving Lee a meaningful chance to surrender — were unreasonable under the circumstances. Chief Gardner testified that Bland’s handling of the situation resulted in a departmental reprimand.
II.
I have no quarrel with the majority’s recitation of the familiar qualified immunity principles that apply in this case. The upshot of those principles -is that we must permit the case to go to a jury if, first, there are genuine issues of material fact as to whether Defendants violated Lee’s Fourth Amendment rights in an objectively unreasonable way and, second, those rights were clearly established at the time of Bland’s shooting of Lee such that a reasonable officer would have known that his conduct violated them. Champion v. Outlook Nashville, Inc., 380 F.3d 893, 900-901 (6th Cir.2004); Feathers v. Aey, 319 F.3d 843, 848 (6th Cir.2003); Burchett, 310 F.3d at 942-43; Risbridger v. Connelly, 275 F.3d 565, 569 (6th Cir.2002) (citing Williams v. Mehra, 186 F.3d 685, 691 (6th Cir.1999) (en banc)).
I agree with the majority that we must evaluate officer Bland’s conduct in light of “the facts and circumstances of [the] case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.” Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (citing Tennessee v. Garner, 471 U.S. 1, 8-9, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). However, these factors offer guidance and are not exhaustive; the ultimate question at all events is whether the totality of the circumstances that faced the officer at the time of his now-challenged actions “justified] [the] particular sort of seizure [he selected].” Id. It should not be surprising, then, that the excessive force inquiry is highly fact-sensitive, with each case being resolved in light of its unique factual context. See id.
As I undertake to explain below, in applying these standards to this case, I do not see how there are no genuine issues of material fact.
III.
In Dickerson v. McClellan, 101 F.3d 1151 (6th Cir.1996), this Court formally adopted a segmented approach to analyzing excessive force claims. Under this approach, we must scrutinize each of the claimed instances of excessive force individually to determine whether any of them cross the constitutional line. Id. at 1161-62; see also Claybrook v. Birchwell, 274 F.3d 1098, 1103-1104 (6th Cir.2001); Boyd v. Baeppler, 215 F.3d 594, 599 (6th Cir. *469 2000). Even before Dickerson, we had applied the segmented approach in cases where an officer’s gun accidentally discharged. See Pleasant v. Zamieski, 895 F.2d 272 (6th Cir.1990); Leber v. Smith, 773 F.2d 101 (6th Cir.1985). In such cases, the proper approach is to analyze the actions that preceded the firing of the gun to assess whether they were objectively reasonable. Here, Plaintiff contends it was objectively unreasonable for Bland to draw his gun in the first instance; to approach Babb’s car immediately instead of keeping his distance for at least a moment; to give Lee only about 2.5 seconds to comply with his demand for cooperation before reaching in through the car window; and to try to secure Lee by reaching through the passenger window while also keeping his finger on the trigger of the gun.
Certainly, Bland’s decision to draw his gun under the circumstances was reasonable. See Illinois v. Wardlow, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); Scott v. Clay County, 205 F.3d 867, 877 (6th Cir.2000); Smith v. Freland, 954 F.2d 343, 346-47 (6th Cir.1992); Leber v. Smith, 773 F.2d 101, 104-105 (6th Cir.1985). But as I said above, the reasonableness of Bland’s merely drawing his gun is not the key issue in this case. The point of the segmented approach to analyzing excessive force claims is that the reasonableness of an officer’s initial decision says nothing about the reasonableness of his subsequent ones; each must be assessed individually. See Dickerson, 101 F.3d at 1161-62. From the deposition testimony and the videotape, a reasonable jury could conclude that each of the decisions Bland made after stopping his car and drawing his gun were objectively unreasonable; indeed, they were reckless.
In particular, Bland approached Lee so rapidly that a reasonable jury could conclude the warning he gave to Lee was doomed to be ineffectual. Indeed, the tape shows that the warning Bland gave to Lee was practically useless because Lee had no time to comply with it. Recall that Bland began to charge Lee’s position the moment after he instructed Lee to come out with his hands up. Recall also that from the stopping of the car to the gun firing, the encounter lasted a total of 2.5 seconds. Police chief Rueben Gardner testified that he disciplined Officer Bland (by filing a written reprimand) for electing to immediately approach Babb’s car. Gardner explained that, per department policy, Bland should have remained behind the door of his car for protection and issued his directives to Lee from that position. Gardner admitted that Bland should have given Lee time to comply with the instruction that he exit the car with his hands raised. The department’s policy instructs an officer in hot pursuit to take cover behind a car door, point his gun at the suspect and communicate directions to the suspect by the police car’s public address system. Plaintiffs expert, James Marsh, echoed these opinions.
For his part, Bland admitted he did not know why he handled the situation in the manner he did. He testified that he did not know why he neglected to follow the department’s hot pursuit policy. He further could not explain why he approached Babb’s car so rapidly, giving Lee what was effectively no time to submit to his show of force. Finally, having approached the car, Bland could not explain why he immediately and rapidly reached through the passenger window instead of opening the door. Bland admitted that attempting to extricate Lee through the window was very dangerous and contrary to what he had been trained to do under the circumstances. He had no answer for why he pursued this admittedly very dangerous course of action. Finally, Bland admitted *470 that his adrenaline was racing and said he was “almost certain” this was why he pulled the trigger.
Viewing this evidence in the light most favorable to Plaintiff, a reasonable jury could find that Bland’s conduct was objectively unreasonable, indeed reckless, under the circumstances.[1] A fitting way to begin the analysis of why this is the case is to review the Graham v. Connor factors, i.e., “the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.” Graham, 490 U.S. at 396, 109 S.Ct. 1865 (citing Garner, 471 U.S. at 8-9, 105 S.Ct. 1694). Here, all Bland knew was that Babb, with Lee as his passenger, had been willing to drive at very high speeds in order to evade capture. The circumstances did not permit Bland to reasonably suspect that Lee had committed a specific crime, only that he might have been complicit in the car chase and that he might have been armed. But although it was reasonable to conclude that Lee may have been armed, this is not to say it was reasonable to assume, without attempting to confirm the assumption, that Lee posed an immediate threat to the safety of Bland and the other officers, a threat so immediate that charging Lee with a gun drawn, and offering him no meaningful chance to surrender, was reasonable. There is no evidence in the record tending to show that Bland thought he saw a weapon in Lee’s lap, or saw Lee reach for something as he approached. In any event, even in situations where the officer-defendant makes such a claim, summary judgment is inappropriate because the question whether the officer’s belief that the suspect was armed was objectively reasonable under the circumstances must be submitted to the jury. E.g., Dickerson, 101 F.3d at 1162-63. (This is a corollary of the general rule that the district court may not credit the defendant-officer’s representation of the facts on the issue of reasonableness where they are disputed by the plaintiff. Adams v. Metiva, 31 F.3d 375, 385 (6th Cir.1994).) The case against summary judgment is even stronger here since Bland has never argued that he saw a weapon in Lee’s possession.
Furthermore, the circumstances do not suggest that Lee was “actively resisting arrest or attempting to evade arrest by flight” at the moment Bland exited his police cruiser. Defendants contend that Lee was not cooperative, but this begs the question whether he had a chance to cooperate in the first place. The extremely brief time between Bland’s verbal warning and when he reached Lee’s position — only 2.5 seconds — suggests that Lee did not have a meaningful chance. The rapid and aggressive manner in which Bland approached Lee might have been reasonable if Lee was attempting to flee (either by driving or running away), see Smith v. Freland, 954 F.2d 343, 347 (6th Cir.1992); Leber v. Smith, 773 F.2d 101 (6th Cir.1985), or reaching for a weapon (or what could reasonably be thought to be a weapon), see Boyd v. Baeppler, 215 F.3d 594, 600 (6th Cir.2000). Circumstances of this kind would of course be material to the Graham excessive force inquiry laid out *471 above. See Graham, 490 U.S. at 396-97, 109 S.Ct. 1865. But, as discussed, these were not the circumstances here.
Lee sat prone as Bland charged toward him with a gun aimed directly at him. A reasonable jury could conclude that Bland gave Lee no meaningful opportunity to submit to Bland’s authority. Indeed, a reasonable jury could conclude that by charging Lee with his gun drawn and immediately reaching into the passenger compartment, still with the gun trained at Lee’s head, Bland acted in an objectively unreasonable way. Furthermore, a reasonable jury could conclude that Bland’s actions presented an unreasonable risk to human life (his and Lee’s). It must be remembered that both Bland’s superior, Chief Gardner and Plaintiffs expert, Mr. Marsh, agreed that Bland should have waited longer and issued directions to Lee from a distance and under cover of a car door. And, as discussed, Bland’s failure to take these required measures resulted in a departmental reprimand. Furthermore, the record contains Mr. Marsh’s uncontradicted conclusion that Bland’s having quickly reached his left arm into the passenger compartment of Babb’s car while at the same time training his gun at Lee’s head, with his finger on the trigger, was unreasonable because it caused “interlimb interaction” and the likelihood of a corresponding “involuntary muscle contraction” in Bland’s right arm. This muscle contraction, posited Marsh, was the likely cause of the trigger being pulled. On the totality of this factual record, it is astonishing that the majority can hold as a matter of law that Bland’s actions were objectively reasonable.
The cases cited by Defendants, and embraced by the majority, in no way change my view. In Leber v. Smith, the plaintiffs brother had called the defendant-officers because he was afraid the plaintiff might commit suicide. 773 F.2d at 102. When the officers arrived at the plaintiffs home, he had departed by car. The brother again voiced concern about the plaintiff, and the officers undertook to locate him. When the plaintiff saw the officers’ police car, he sped away and a high speed chase ensued. Id. The plaintiff stopped his car at a roadblock and one officer exited his car, with his gun drawn, and ordered the plaintiff to exit; the plaintiff did not respond. Id. at 102. Another officer, also with his gun drawn, exited his car and began to approach the plaintiffs car but slipped on a patch of ice, thus causing his gun to accidentally fire. The bullet hit the plaintiff, who became paralyzed as a result. Id.
The plaintiffs sole argument in Leber was that it was objectively unreasonable for the officer merely to have drawn his gun, see id. at 105. The Court summarily rejected this suggestion, noting that the officer was at that moment facing a potentially suicidal person who had just led the police on a high speed chase. Id. Because of its brief treatment of the excessive force claim, Leber leaves very little guidance to future panels of this Court,[2] but, in any event, it resolved only the limited question of whether it was reasonable for the officer to draw his gun in the first instance. As discussed throughout this memo, however, Plaintiff in this case does not rest her excessive force claim exclusively on Bland’s decision to draw his gun. Instead, Plaintiff additionally argues that Bland’s subsequent decision to charge Lee with his gun drawn was unreasonable under the circumstances. Furthermore, it appears that in Leber the officers instructed the plaintiff to exit his vehicle from a distance *472 and gave the plaintiff time to comply. See id. at 102-103.
The second case, Pleasant v. Zamieski, is likewise distinguishable, principally because it did not arise in the summary judgment posture, as this case does, but rather on appeal from a jury verdict in favor of the defendants. In Pleasant, the officer approached Pleasant’s car and identified himself as a police officer by showing his badge and gun. 895 F.2d at 273. Pleasant ignored the officer’s initial request to exit the car but then complied and exited. Id. However, he then attempted to climb a nearby fence and escape. As the officer grabbed Pleasant from behind to prevent him from evading capture, the gun accidentally discharged, killing Pleasant. Id. A jury found it was reasonable for the officer to draw his gun and also reasonable for him not to re-holster his gun before trying to stop Pleasant from escaping. Id. at 276-77.
This Court declined to overturn the verdict, concluding: “[I]t appears that Zamieski had little time to react. Had he taken the time to put his gun away, Pleasant would have escaped. While the consequences of his actions were, by accident, tragic, they were not objectively unreasonable.” Id. at 277. In contrast to the facts of Pleasant, Lee was not attempting an escape when Bland charged at him, thus Bland had time to gauge the situation further but neglected to do so. Furthermore, Pleasant offers little guidance as to whether the issue of reasonableness is triable in this case because it came to the Court as an appeal of a jury verdict which required it to review the verdict only for clear error. See id. at 274-75 For these reasons, the district court erred in relying on Pleasant and Leber in granting summary judgment to Defendants. It is regrettable that the majority today makes the same mistake.
I am firmly of the view that a reasonable jury could conclude Officer Bland’s decisions to charge Lee with his gun drawn, without giving Lee a meaningful opportunity to comply with his instructions, and reach into the passenger compartment while still aiming the gun at Lee’s head, were objectively unreasonable, indeed reckless.
IV.
Furthermore, on this record a reasonable jury could conclude that Bland’s conduct went beyond mere negligence, i.e., beyond objective unreasonableness, such that application of the qualified immunity doctrine would be improper. Cf. Saucier v. Katz, 533 U.S. 194, 201-202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Qualified immunity would only be appropriate if. Bland’s right to be free from a police officer’s reckless use of force was not clearly established at the time he was shot, such that a reasonable officer would not have known that the conduct was unlawful. McKinley v. City of Mansfield, 404 F.3d 418, 439 (6th Cir.2005); Champion v. Outlook Nashville, Inc., 380 F.3d 893, 900-901 (6th Cir.2004); Feathers v. Aey, 319 F.3d 843, 848 (6th Cir.2003); Burchett, 310 F.3d at 942-43; Risbridger v. Connelly, 275 F.3d 565, 569 (6th Cir.2002) (citing Williams v. Mehra, 186 F.3d 685, 691 (6th Cir.1999) (en banc)).
The Supreme Court has repeatedly emphasized that the purpose of the second prong of the qualified immunity inquiry is to ensure that the defendant had sufficient notice of the unlawfulness of his conduct. Brosseau v. Haugen, 543 U.S. 194, 125 S.Ct. 596, 599-600, 160 L.Ed.2d 583 (2004) (per curiam); Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); Saucier, 533 U.S. at 206, 121 S.Ct. 2151. Nevertheless, as this Court recently said, “[t]he Supreme Court has refused to *473 require that a plaintiff demonstrate the existence of a ‘fundamentally similar’ or ‘materially similar’ case.” Champion, 380 F.3d at 902 (quoting Hope, 536 U.S. at 741, 122 S.Ct. 2508). The determinative question is whether the prior cases relied upon by the plaintiff “gave reasonable warning that the conduct then at issue violated constitutional rights.” Hope, 536 U.S. at 740, 122 S.Ct. 2508. As this Court has held: “[A]n action’s unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs.” Feathers, 319 F.3d at 848. Consequently, a novel factual context is not a bar to recovery in an excessive force suit. Hope, 536 U.S. at 740, 122 S.Ct. 2508; Champion, 380 F.3d at 902. Finally, while judicial decisions may- supply notice of an action’s unlawfulness, see Higgason v. Stephens, 288 F.3d 868, 876 (6th Cir.2002), so too may an officer’s training and the regulations governing his official conduct. Hope, 536 U.S. at 743-45, 122 S.Ct. 2508; Champion, 380 F.3d at 902.
Because a reasonable jury could conclude that Bland’s shooting Lee resulted from decisions that were so far outside the bounds of reasonable police decision-making, qualified immunity should not apply at this stage. Bland’s rapid gun-wielding approach of Lee was clearly in contravention of the police department’s policies, not to mention generally accepted law enforcement practices. In addition, a reasonable officer would have been well aware of the clearly established principle that seizures must be effectuated in a manner that is reasonable under the circumstances, with the minimum amount of force necessary to accomplish the seizure. See Graham, 490 U.S. at 397-98, 109 S.Ct. 1865; Burchett, 310 F.3d at 946; United States v. Sanders, 719 F.2d 882, 887 (6th Cir.1983). Thus, Bland was on notice that his actions were “clearly proscribed.” Champion, 380 F.3d at 902 (citing Hope, 536 U.S. at 744-45, 122 S.Ct. 2508). Indeed, Bland admitted that he did not know why he made the decision to charge rather than wait and give instructions from a more distant and covered position. He neglected to give Lee a meaningful opportunity to submit to his authority, and instead elected to charge Lee’s position immediately with, let us not forget, a gun pointed directly at Lee. Bland has offered no law enforcement rationale to explain his conduct. Under these circumstances, a reasonable jury could infer that Bland acted recklessly and in clear disregard for Lee’s Fourth Amendment right to be free from excessive force. See Kostrzewa v. City of Troy, 247 F.3d 633, 640-11 (6th Cir.2001); Billington v. Smith, 292 F.3d 1177, 1189-90 (9th Cir.2002); Alexander v. City & County of San Francisco, 29 F.3d 1355, 1368 (9th Cir.1994) (all holding that an officer’s reckless conduct in connection with the use of excessive force will preclude application of the qualified immunity doctrine). In sum, viewing the facts in the light most favorable to Plaintiff, see Saucier, 533 U.S. at 201, 121 S.Ct. 2151, Bland is not entitled to qualified immunity.
V.
The majority has dissociated itself with the remarkable facts of this case. As I have endeavored to explain, genuine issues of material fact abound. Was it reasonable for Bland to charge at Lee with his gun drawn, giving Lee no meaningful chance to submit to Bland’s authority? To allow only 2.5 seconds for Lee to consider the instruction to exit the car and, moreover, to force Lee to consider this instruction while facing an advancing policeman with a gun trained directly at him? To continue full-speed upon arriving at Babb’s car and to plunge through the passenger window with the gun still in hand and his *474 finger pressing on the trigger? The case law and the record suggest some or all of these decisions may not have been reasonable under the circumstances of this case and, furthermore, that a reasonable officer would have known it. A trial is required. I therefore dissent.

. The majority would be correct to eschew reliance on the testimony of Gardner and Marsh if there were a clear on-point case to the effect that Bland’s conduct under the circumstances of this case was reasonable as a matter of law. (This unremarkable proposition is all the case cited by the majority, Smith, 954 F.2d at 347, stands for. See Maj. Op. n. 9.) There being no such case (the majority certainly did not find one), the majority’s summary rejection of the probative value of this testimony on the highly fact-bound question of whether Bland acted reasonably in this case is mystifying.

. Indeed, the last time Leber was cited by a panel of this court was in 1992. See Purnell v. City of Akron, 1992 WL 296714 (6th Cir.1992) (unpublished).