RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2003 FED App. 0236P (6th Cir.)
File Name:  03a0236p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

KEVIN LAMAR ADAMS;
BOBBIE ADAMS,
    *Plaintiffs-Appellees,*

    *v.*

CITY OF AUBURN HILLS, a
municipal corporation, et al.,
    *Defendants,*

JOHN BACKSTROM,
    *Defendant-Appellant.*

No. 02-1379

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor.
No. 00-60443—Marianne O. Battani, District Judge.

Argued:  May 6, 2003

Decided and Filed:  July 21, 2003

Before:  SUHRHEINRICH and COLE, Circuit Judges;
CARR, District Judge.[*]

_____

   [*] The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by designation.

---

## COUNSEL

**ARGUED:**  G. Gus Morris, COX, HODGMAN & GIARMARCO, Troy, Michigan, for Appellant.  H. Wallace Parker, BLOOMFIELD LAW CENTER, Bloomfield Hills, Michigan, for Appellees. **ON BRIEF:** G. Gus Morris, COX, HODGMAN & GIARMARCO, Troy, Michigan, for Appellant.  H. Wallace Parker, BLOOMFIELD LAW CENTER, Bloomfield Hills, Michigan, for Appellees.

_____

## OPINION

_____

   JAMES G. CARR, District Judge.  Kevin Lamar Adams claims that Auburn Hills, Michigan, police officer John Backstrom used excessive force against him in making a police stop. Officer Backstrom appeals from the district court's denial of his motion for summary judgment based on qualified immunity. We hold that Adams has not made out a constitutional violation against Backstrom. We therefore **REVERSE** the district court's denial of qualified immunity and **REMAND** to dismiss the complaint.

### I.  BACKGROUND

#### A.  Factual Background

   This case arises from a domestic dispute that resulted in Officer Backstrom's shooting at the car Kevin Adams was driving. On the evening of March 8, 1999, Kevin Adams rented a room at the Motel 6 in Auburn Hills, Michigan, with an old girlfriend. Adams drove a Ford Taurus to the motel. Earlier that year, Geisha Breckenridge, Adams's ex-girlfriend,

agreed to sell the Taurus to Adams. Breckenridge allowed Adams to use the car while he purchased it.

In the early morning hours of March 9, 1999, Breckenridge spotted the Taurus at the motel. Using a tire iron, she smashed in the window of the room in front of the Taurus. Unbeknownst to Breckenridge, it was not the room occupied by Adams. Adams heard the commotion, however, and stayed in his rented room.

Motel 6 employees called the Auburn Hills police department. Sergeant Glenn Heath and Officer Brian Martin responded to the call. They found Breckenridge in the back seat of her car in the motel parking lot. Breckenridge admitted breaking the window, and she told the officers she was there because Adams was with another woman. Breckenridge also said she wanted to retrieve her keys to the Taurus, although she admitted allowing Adams to use the Taurus.

After Breckenridge was in police custody, Officer John Backstrom arrived at the scene. Sgt. Heath, as the higher-ranking officer, told Backstrom that his presence was not needed and that he could leave. As Backstrom was leaving, a motel guest asked the officer for assistance unlocking his car.

Shortly thereafter, Sgt. Heath noticed that Adams was attempting to leave the motel in the Taurus. Sgt. Heath yelled to Officer Backstrom -- who was across the parking lot near the exit -- to stop the Taurus and retrieve Breckenridge's keys.

According to Adams, as he drove towards the motel exit, Officer Backstrom walked in front of the Taurus with his gun in one hand and his other hand up for Adams to stop. Adams stopped the vehicle and stood halfway outside the vehicle with his left hand on the top of the door and his right hand on top of the car. Adams asked Backstrom if he had broken any law and the officer replied that he had not. Adams then told Backstrom that because he had not broken any laws, he was leaving. Backstrom yelled for Adams to get out of the car three times and held his gun near the driver's side window. When Adams did not move, Adams claims Officer Backstrom fired two shots into the driver's side door. As Adams drove away, Backstrom fired two more shots at the Taurus's left rear wheel and mud flap.[1]

Though Officer Backstrom's shots had struck the Taurus, Adams was able to drive to the home of his mother, Bobbie Adams. Auburn Hills police issued a report regarding the Taurus. Pontiac, Michigan, police spotted the Taurus in front of Bobbie Adams's home. When police officers came to the back door of the home, Kevin Adams ran out the front door. Bobbie Adams told the officers that she had not seen her son, and she would not allow the officers to search the home. The officers set up surveillance at the house. Later that morning, Bobbie Adams allegedly consented to a search of her home. A yellow jacket that Kevin Adams reportedly wore at the motel was found inside the home. The police impounded the Taurus. Kevin Adams subsequently surrendered with his attorney.

The Oakland County Prosecutor's Office charged Adams with driving with a suspended license and assault with intent to do great bodily harm for attempting to run down Officer Backstrom. A jury convicted Adams on the suspended license charge but acquitted him on the assault charge.

## B. Procedural Background

In December, 2000, Adams and his mother filed a 42 U.S.C. § 1983 claim in the United States District Court for

---

[1] Officer Backstrom denies shooting into the door of the Taurus, and no bullet holes were found in the driver's side door. The only bullet holes were in the wheel and mud flap.

the Eastern District of Michigan. Plaintiffs alleged the City of Auburn Hills, Auburn Hills Police Department, Auburn Hills Police Chief Doreen Olko, Lieutenant David P. Chase, Sgt. Heath, and Officer Backstrom violated the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

The defendants responded by seeking summary judgment on the following bases: 1) defendants Auburn Hills and Auburn Hills Police Department did not have a policy, custom, or procedure which caused a constitutional deprivation; 2) Chief Olko, Sgt. Heath, and Lt. Chase had no direct involvement in the alleged acts of deprivation; and 3) Officer Backstrom was entitled to qualified immunity.

The district court heard oral argument on defendants' motion. Thereafter, the district judge, ruling from the bench, granted defendants' motion for summary judgment on all counts except the Fourth Amendment claim against Officer Backstrom. The court stated:

> The defendant argues here if it's a mistake to shoot that tire and it's reasonable for him, then the immunity defense of course would apply. But here there's so many factual issues about did he shoot as the car was driving away, etc., and I think that those issues first have to be resolved by a jury.

J.A. 522.

Backstrom filed an interlocutory appeal under *Mitchell v. Forsyth*, 472 U.S. 511 (1985).

## II.  DISCUSSION

### A.  Standard of Review

Review of the denial of qualified immunity is de novo. *Risbridger v. Connelly*, 275 F.3d 565, 568 (6th Cir. 2002). As noted in *Risbridger*, "[a] district court's decision rejecting an individual defendant's claim to qualified immunity is immediately appealable to the extent that it raises a question of law, notwithstanding the absence of a final judgment." *Id.* at 568 (citing *Behrens v. Pelletier*, 516 U.S. 299, 310-11 (1996); *Mitchell*, 472 U.S. at 530).

### B.  Qualified Immunity

As the Supreme Court explained in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

Whether a defendant is entitled to qualified immunity depends on: "(1) whether the facts taken in the light most favorable to plaintiff could establish a constitutional violation; (2) whether the right was a 'clearly established' right of which any reasonable officer would have known; and (3) whether the official's actions were objectively unreasonable in light of that clearly established right." *Risbridger*, 275 F.3d at 569 (citing *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999)).

The sole issue in this appeal is whether Officer Backstrom, by shooting at Adams's car, violated Adams's Fourth Amendment rights.

The Supreme Court held in *Graham v. Connor*, 490 U.S. 386 (1989), that "*all* claims that law enforcement officers

have used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* at 395 (emphasis in original).

The parties argue whether Officer Backstrom's actions were objectively reasonable in light of the facts and circumstances surrounding the shooting. The Sixth Circuit has looked to several factors in determining whether objective reasonableness exists, including: 1) "the severity of the crime at issue," 2) "whether the subject pose[d] a threat to anyone," and 3) "whether the suspect [was] attempting to escape or . . . resisting arrest." *Patrick v. City of Detroit*, 906 F.2d 1108, 1115 (6th Cir. 1990) (quoting *Graham*, 490 U.S. at 396).

Citing *Graham* and *Tennessee v. Garner*, 471 U.S. 1 (1985), Adams argues that a person has a clearly established right not to be shot unless he or she poses a threat to the police or to others. Accordingly, because Adams was unarmed and Officer Backstrom was not in the path of the Taurus, Adams argues it was not objectively reasonable for Officer Backstrom to shoot at him.

Officer Backstrom argues that shooting at the tires of the Taurus was not excessive force because Adams was "fleeing and posed an immediate threat to the officer's personal safety and in addition posed a threat to members of the public because he was fleeing the scene in a rapid and reckless fashion." Br. at 17-18. Shooting at the tire in an attempt to disable it was, Backstrom argues, a reasonable application of force.

The parties in this case have skipped a preliminary question. Before the reasonableness of Backstrom's use of force can be analyzed, we must first determine whether there was a seizure for purposes of the Fourth Amendment. If Adams was not seized, the Fourth Amendment has not been

violated, and consideration of the reasonableness of Officer Backstrom's conduct is unnecessary.

A "seizure" triggering the Fourth Amendment's protections occurs only when government actors have, "by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'" *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).

In *United States v. Mendenhall*, 446 U.S. 544, 553 (1980), the Supreme Court stated: "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *See also Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (finding that a Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement *through means intentionally applied*.") (emphasis in original).

In *California v. Hodari D.*, 499 U.S. 621 (1991), the Supreme Court held that where police make a show of authority but the subject does not yield, there is no seizure for Fourth Amendment purposes. In *Hodari*, police chased a juvenile who discarded cocaine while fleeing, before he was tackled by an officer. The Court ruled that the cocaine could be introduced in the criminal proceeding because the defendant had not been seized before the officer took possession of the drugs. Because the defendant did not comply with the order to stop, "he was not seized until he was tackled." *Id.* at 629. The word "seizure," according to the Court, does not apply "to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee." *Id.* at 626.

This court specifically has held that shooting at a fleeing felon, but missing, is not a "seizure." In *Cameron v. City of Pontiac*, 813 F.2d 782 (6th Cir. 1987), the mother of the deceased fleeing suspect filed a § 1983 action against an

officer for unjustifiably using deadly force in attempting to apprehend her son, a burglary suspect. Police chased the suspect and shot at him several times, but never hit him. The suspect ran onto a busy expressway and was fatally struck by a motor vehicle.

We explained:

Cameron was not seized by [officer defendants]. Cameron elected to flee, not to be restrained. The officers' show of authority by firing their weapons, while designed to apprehend Cameron, did not stop or in any way restrain him. "Just as clearly, when the pursuit terminated in an accident [causing the death of] the minor plaintiff, he was not restrained by, or as a result of, the officer's show of authority." Cameron's freedom of movement was restrained only because he killed himself by electing to run onto a heavily traveled, high speed freeway.

The use of deadly force standing alone does not constitute a seizure, and absent an actual physical restraint or physical seizure, the alleged unreasonableness of the officers' conduct cannot serve as a basis for a § 1983 cause of action anchored in the Fourth Amendment. Consequently, the reasonableness of the officers' use of their weapons in attempting to apprehend Cameron cannot be challenged under § 1983.

*Id.* at 785 (citing *Galas v. McKee*, 801 F.2d 200, 202 (6th Cir. 1986)).

Courts outside the Sixth Circuit also have addressed whether shooting at a car -- but not hitting or stopping the individuals inside of it -- is a violation of the Fourth Amendment. *See e.g.*, *Latta v. Keryte*, 118 F.3d 693, 699-700 (10th Cir. 1997) (finding that the plaintiff was "seized" only when he stopped at a roadblock and not when the defendant-

officer shot the tires of plaintiff's car in an unsuccessful pursuit); *Cole v. Bone*, 993 F.2d 1328, 1333 (8th Cir. 1993) ("[T]he shots that were fired at the truck and that did not hit [plaintiff] were not seizures because they too failed to produce a stop."); *McAllister v. New York City Police Dept.*, 49 F. Supp. 2d 688, 698-99 (S.D.N.Y. 1999) (granting defendant-officers' motion for summary judgment on plaintiff's excessive force-shooting claim because plaintiff suffered no damage when police fired into the car but the plaintiff was not hit or hurt); *Palmer v. Williamson*, 717 F. Supp. 1218, 1223 (W.D. Tex. 1989) ("[M]ere firing does not establish a 'seizure' within the meaning of the Fourth Amendment. . . . [E]ven if [the officer] meant to stop [the plaintiff] by firing his gun at the car as it pulled away, [the plaintiff] was not stopped.").

In this case, Officer Backstrom's firing at the automobile did not impair Adams's movement. Adams was not hit by Officer Backstrom's bullets and was able to leave the scene unharmed despite Backstrom's use of his firearm. Even though the tire of the Taurus was hit, it appears that the car still was operable and Adams reached his destination, his mother's house.

Hence, Adams never was seized, and our holding that no seizure occurred makes the discussion of the reasonableness of Backstrom's conduct unnecessary. Because the Fourth Amendment is not implicated, Adams has not alleged a constitutional violation to support a § 1983 claim. Without an underlying constitutional violation, the question of whether Backstrom is entitled to qualified immunity is moot.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings in accordance with this decision.