Juliush H. CABELL, Plaintiff–
Appellant,

v.

Daniel T. ROUSSEAU, et al.,
Defendants–Appellees.

No. 04–1258.

United States Court of Appeals,
Seventh Circuit.

Submitted March 30, 2005.*

Decided March 30, 2005.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Juliush H. Cabell, Butner, NC, pro se.

Thomas E. Kieper, Office of the United States Attorney, Indianapolis, IN, for Defendants–Appellees.

Before BAUER, POSNER, and EASTERBROOK, Circuit Judges.

### ORDER

On suspicion that Juliush Cabell was a member of a methamphetamine distribution ring, federal and state law enforcement officers executed search and arrest warrants at his southern Indiana home on March 12, 1999. A gun battle ensued in which two officers were wounded; Cabell emerged from the melee unscathed and was arrested. He then brought this lawsuit, claiming that the ten defendant officers entered his house in violation of the Fourth Amendment, and used excessive force against him and his property during the shootout. The wounded officers brought state-law counterclaims for assault and battery. The district court granted summary judgment for the officers in all respects, and Cabell now appeals. We affirm.

At summary judgment Cabell failed to file a statement of material facts disputing the officers' factual assertions, as required by Local Rule 56.1(b) of the Southern District of Indiana. The district court therefore deemed Cabell to have admitted the officers' version of events, S.D. Ind. R. 56.1(e), a decision that Cabell has not challenged. We therefore recount the facts before the district court as presented in the officers' uncontested statements of material facts, and draw from them any reasonable inferences in Cabell's favor. *See Curran v. Kwon*, 153 F.3d 481, 485–86 (7th Cir.1998); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921–23 (7th Cir.1994).

The search of Cabell's residence was a part of a multi-site raid organized by the Drug Enforcement Administration and executed with the help of local law enforcement. At an intelligence briefing two days before the warrants were executed, DEA agent Daniel Rousseau told leaders of the

Evansville Police Department's SWAT team that of all the suspects Cabell posed the highest risk of violence. Rousseau showed the officers a surveillance photograph believed to depict Cabell carrying an assault rifle while walking from his car to the back door of his house. Rousseau also stated that Cabell had a street reputation for violence (he had been charged with battering a law enforcement officer, resisting arrest, and aggravated battery), that the house was equipped with surveillance cameras, and that another house to be raided was just blocks from Cabell's, so they should expect trouble from the neighbors.

The SWAT team initiated the videotaped raid at 6:30. One officer knocked loudly three times and yelled, "Search warrant! Search warrant!" and within seven seconds the outer door had been pried open and the inner door breached with a battering ram. Another officer then moved into the doorway behind a well-marked police shield, shouting, "Police, search warrant!" Cabell fired a single shot from inside the residence, and several officers again yelled, "Police, search warrant, search warrant!" Cabell answered with three more shots at the officers standing on the porch. Officer Hurt was struck in the face below his mouth, and Officer Rizen was struck in his bulletproof vest. At this point seven of the officers returned fire in the direction of the muzzle flashes coming from inside the house; in six seconds they discharged 105 rounds while the men on the porch retreated to safety. During that time Cabell fired one more shot at the officers.

Several moments later, unprompted by the officers, Cabell's wife exited the house holding a small child and was ordered to join the SWAT team in the street. Then Cabell himself left the house and walked toward the street. An officer ordered Ca-

bell into a prone position, directed him to show that his hands were empty, and then instructed him crawl to the officers' position behind a police vehicle. After being handcuffed, Cabell stated that his son was still in the house. The officers were wary at first, suspecting that a barricaded gunman was lying in wait and would attack them if they approached the house, but eventually entered and found the boy.

Based on evidence recovered at the house, an indictment was returned against Cabell for using a deadly weapon to forcibly resist law enforcement officers performing official duties, *see* 18 U.S.C. § 111. The evidence was suppressed, however, upon the district court's conclusion that the officers had violated the knock-and-announce statue, 18 U.S.C. § 3109. *United ed States v. Cabell*, No. EV 99–13–CR–01 Y/H, 1999 WL 1938855 (S.D.Ind. Nov.15, 1999). The officers asserted that they complied with the statute and advanced no argument that exigent circumstances permitted them to forego the statute's requirements. The district court found that the approximately two seconds between the SWAT team's knock and its breach of the outer door was an insufficient as a matter of law. *Id.* at *3. The court also noted the testimony of Cabell's wife at the hearing; she stated that the surveillance photograph purporting to show Cabell armed with an assault rifle was actually a picture of another individual holding a BB gun. *Id.* at *1 n. 1.

In response to this lawsuit, the district court bifurcated Cabell's claims and those of Officers Hurt and Rizen, first granting summary judgment on Cabell's claims. The court held that the high potential for danger in the raid created exigent circumstances that excused compliance with the knock-and-announce requirement of the Fourth Amendment, and held that the officers did not as a matter of law use ex-

cessive force in exchanging gunfire with Cabell. In a separate entry the court granted summary judgment on Hurt's and Rizen's counterclaims, reasoning that the officers had introduced uncontested evidence that Cabell had battered them, entitling them to damages.

■ Cabell first attacks the resolution of his knock-and-announce claim. He acknowledges that police officers can make an immediate, unannounced entry if there are exigent circumstances—for example, if the suspect's awareness of the search would increase the danger to the officers or to others. *United States v. Banks*, 540 U.S. 31, 36–37, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003); *Richards v. Wisconsin*, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997); *Wilson v. Arkansas*, 514 U.S. 927, 936, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995); *United States v. Gillaum*, 372 F.3d 848, 855 (7th Cir.2004). Nevertheless, Cabell contends that this case did not present such circumstances. Whether he is right is a mixed question of law and fact that we review *de novo*. *United States v. Kempf*, 400 F.3d 501, 502–03 (7th Cir.2005); *United States v. Bailey*, 136 F.3d 1160, 1164 (7th Cir.1998). Our review focuses on the totality of the circumstances known to the officers at the time of the search. *Gillaum*, 372 F.3d at 855.

Here exigent circumstances justified the officers' entry into the house before waiting for Cabell to answer. Cabell argues that the officers had only a "general fear" that he was dangerous, but the uncontested evidence reveals a number of specific facts that prefigured a violent confrontation: a surveillance photo indicating that Cabell was likely armed; his membership in a methamphetamine distribution network with associates living nearby; his potential for violence as indicated by past criminal charges, and the security cameras monitoring the exterior of his house.

Courts have recognized several of these factors as indicia of exigent circumstances, *see Richards*, 520 U.S. at 391 n. 2 (recognizing high potential for violence where drugs and firearms are at play); *United States v. Gambrell*, 178 F.3d 927, 929–30 (7th Cir.1999) (same); *see also United States v. Reilly*, 224 F.3d 986, 991 (9th Cir.2000) (suspect's violent criminal history contributed to exigent circumstances); *United States v. Lucht*, 18 F.3d 541, 549–50 (8th Cir.1994) (same), and those that remain reasonably added to the officers' concerns.

Cabell tries to undermine the finding of exigency by pointing out that his wife testified at the suppression hearing that the photograph purportedly showing him carrying an assault rife actually depicts his teenage son with a BB gun. This argument fails, however, because the appropriate inquiry concerns the circumstances as the officers perceived them at the time of the search, *see Gillaum*, 372 F.3d at 855, and Cabell offered no evidence to counter the officers' affidavit testimony that they believed the photograph showed him carrying an assault rifle. Finally, Cabell argues that there was no exigency because some time elapsed between the issuance of the warrant and the search. Yet exigent circumstances are measured at the time of the search, *Figg v. Schroeder*, 312 F.3d 625, 639 (4th Cir.2002), and the relevant evidence is not limited to the facts set out in the warrant, so this argument fails too.

■ Next Cabell takes up the resolution of his excessive force claim. He contends that the police officers violated his Fourth Amendment rights by firing 105 shots to his five, a number he describes as "clearly excessive." The officers contend that their behavior was reasonable, and the district court granted summary judgment on that basis. But, as was the case in *Adams v. City of Auburn Hills*, 336 F.3d 515 (6th

Cir.2003), everyone has neglected to ask first whether Cabell was "seized" within the meaning of the Fourth Amendment. A plaintiff bringing an excessive force claim must show both that a seizure took place and that it was unreasonable. *See Ewolski v. City of Brunswick*, 287 F.3d 492, 505–06 (6th Cir.2002); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir. 1994); *Donovan v. City of Milwaukee*, 17 F.3d 944, 948 (7th Cir.1994).

■ The Supreme Court held in *California v. Hodari D.*, 499 U.S. 621, 626–27, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), that there is no seizure if an officer's show of force does not either physically touch the individual or compel him to submit to the officer's authority. This rule has led a number of circuits to conclude that no seizure took place where the officers' shots neither struck nor stopped the plaintiff. *See Adams*, 336 F.3d at 519–20 (rejecting excessive force claim because shooting at car's tires was not seizure); *Schulz v. Long*, 44 F.3d 643, 647–48 (8th Cir.1995) (officers did not seize armed individual in basement with errant shots; seizure occurred only when shot struck and stopped him); *Bella v. Chamberlain*, 24 F.3d 1251, 1255–56 (10th Cir.1994) (no seizure where officers fired at helicopter but failed to stop plaintiff); *Cole v. Bone*, 993 F.2d 1328, 1332–33 (8th Cir.1993) (no seizure when officers' shots failed to stop plaintiff's car; seizure occurred only when plaintiff was shot and killed); *Carter v. Buscher*, 973 F.2d 1328, (7th Cir.1992) (seizure took place only when police shot suspect, not when officers fired earlier shots at him and missed); *see also United States v. Bradley*, 196 F.3d 762, 768 (7th Cir. 1999) (officer seized plaintiff by firing single shot into his car that forced plaintiff to pull over). Here, Cabell was not struck by the officers' bullets, and he did not submit to their authority until the firing had

ceased—to the contrary, he responded to their shots by returning fire of his own. He therefore was not seized, and could not have been the victim of excessive force. Cabell's complaint also invokes due process, and could be construed to raise a claim that the officers' actions "shock the conscience" under *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), but the undisputed evidence shows that the officers in returning fire intended to commit no harm unrelated to the legitimate use of force necessary to protect themselves and the public. *See Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 373 (9th Cir. 1998).

■ Cabell also characterizes as "excessive force" the destruction of his property by the officers' gunshots; he asserts without any supporting evidence that the officers caused over $6,000 in damage to his television, stereo, furniture, and windows. A claim for property damage during the execution of a warrant is evaluated under the Fourth Amendment's reasonableness requirement. *United States v. Ramirez*, 523 U.S. 65, 71, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998); *Heft v. Moore*, 351 F.3d 278, 283 (7th Cir.2003).

The officers did not act unreasonably by returning fire. Police may respond to mortal threats in the execution of a warrant with a proportionate amount of force, including deadly force. *Maravilla v. United States*, 60 F.3d 1230, 1233 (7th Cir. 1995); *Ginter v. Stallcup*, 869 F.2d 384, 389 (8th Cir.1989). It is undisputed that the officers were caught off-guard by multiple shots from a gunman they could not see. Cabell had no excuse for shooting because the police loudly announced from outside that they were serving a search warrant and repeatedly screamed "Police, search warrant!" once the door had been breached. Two of the SWAT team mem-

bers were hit, and almost all of them responded with fire of their own—the majority of it coming from officers providing cover for those trying to flee the porch. In addition to protecting themselves, the officers needed to prevent Cabell's gunfire from injuring others; one of his bullets was retrieved from the house across the street. Thus, while the figure of 105 shots may on paper seem high, under the totality of the circumstances in which the officers were forced to react quickly to a sustained and deadly attack, no jury could find that they acted unreasonably.

■ Finally, Cabell challenges the district court's judgment in favor of Officers Hurt and Rizen on their counterclaim for assault and battery. He contends that Rizen has no claim for battery because he was not actually shot; at Cabell's criminal trial the government was unable to prove that Rizen's vest was struck by a bullet. But Cabell failed to present this evidence to the district court in his response to the officers' motion for summary judgment. Furthermore, even if Cabell's version of events were true it would not affect the judgment. He would still have committed an assault against Rizen by firing at him; Rizen unquestionably sustained minor injuries as a result and received damages in the amount of his medical bill. *See McGlone v. Hauger*, 56 Ind.App. 243, 104 N.E. 116, 119–20 (1914) (plaintiff who pleads assault and battery may recover under either theory).

■ Cabell also attacks the counterclaim judgment with an undeveloped argument that he did not know the officers were policemen and thought he was defending his home from burglars. But the uncontested evidence shows that he was in

fact aware that the intruders were law enforcement officers. The SWAT team loudly declared its presence before opening the door and again multiple times after Cabell's first shot was fired—and hence before he fired the shots that struck Hurt and Rizen. Cabell offered no evidence that he did not hear these difficult-to-miss announcements, which were given in a lull between Cabell's shots, and therefore created no issue of material fact for trial. Summary judgment was properly granted.

AFFIRMED.