**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0583n.06
Filed: July 11, 2005

No. 03-2421

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KEVIN L. ADAMS; BOBBIE ADAMS, | ) | |
| | ) | |
| | ) | **ON APPEAL** FROM THE |
| **Plaintiffs-Appellants,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| CITY OF AUBURN HILLS et al., | ) | |
| | ) | **O P I N I O N** |
| **Defendants-Appellees.** | ) | |
| | ) | |

Before: MOORE and COOK, Circuit Judges, and GWIN,[*] District Judge.

**KAREN NELSON MOORE, Circuit Judge.** This is a 42 U.S.C. § 1983 case asserting

excessive force and illegal search in violation of the Fourth Amendment. Following our reversal

of a portion of the district court's decision on interlocutory appeal, *Adams v. City of Auburn Hills*,

336 F.3d 515, 520 (6th Cir. 2003) ("*Adams I*"), the district court entered an order denying all relief.

As we have previously concluded that Plaintiff-Appellant Kevin L. Adams ("Mr. Adams") did not

suffer a violation of his right to be free from excessive force, and as neither Mr. Adams nor Plaintiff-

Appellant Bobbie Adams ("Mrs. Adams")[1] challenges the district court's conclusion that none of

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

[1]Mrs. Adams is Mr. Adams's mother.

the named defendants participated in the alleged illegal search of their home, we **AFFIRM** the

judgment of the district court.

## I. BACKGROUND

We have previously set forth the background to this case:

This case arises from a domestic dispute that resulted in Officer Backstrom's shooting at the car Kevin Adams was driving. On the evening of March 8, 1999, Kevin Adams rented a room at the Motel 6 in Auburn Hills, Michigan, with an old girlfriend. Adams drove a Ford Taurus to the motel. Earlier that year, Geisha Breckenridge, Adams's ex-girlfriend, agreed to sell the Taurus to Adams. Breckenridge allowed Adams to use the car while he purchased it.

In the early morning hours of March 9, 1999, Breckenridge spotted the Taurus at the motel. Using a tire iron, she smashed in the window of the room in front of the Taurus. Unbeknownst to Breckenridge, it was not the room occupied by Adams. Adams heard the commotion, however, and stayed in his rented room.

Motel 6 employees called the Auburn Hills police department. Sergeant Glenn Heath and Officer Brian Martin responded to the call. They found Breckenridge in the back seat of her car in the motel parking lot. Breckenridge admitted breaking the window, and she told the officers she was there because Adams was with another woman. Breckenridge also said she wanted to retrieve her keys to the Taurus, although she admitted allowing Adams to use the Taurus.

After Breckenridge was in police custody, Officer John Backstrom arrived at the scene. Sgt. Heath, as the higher-ranking officer, told Backstrom that his presence was not needed and that he could leave. As Backstrom was leaving, a motel guest asked the officer for assistance unlocking his car.

Shortly thereafter, Sgt. Heath noticed that Adams was attempting to leave the motel in the Taurus. Sgt. Heath yelled to Officer Backstrom — who was across the parking lot near the exit — to stop the Taurus and retrieve Breckenridge's keys.

According to Adams, as he drove towards the motel exit, Officer Backstrom walked in front of the Taurus with his gun in one hand and his other hand up for Adams to stop. Adams stopped the vehicle and stood halfway outside the vehicle with his left hand on the top of the door and his right hand on top of the car. Adams asked Backstrom if he had broken any law and the officer replied that he had not. Adams then told Backstrom that because he had not broken any laws, he was leaving. Backstrom yelled for Adams to get out of the car three times and held his gun near the driver's side window. When Adams did not move, Adams claims Officer

2

Backstrom fired two shots into the driver's side door. As Adams drove away, Backstrom fired two more shots at the Taurus's left rear wheel and mud flap.

Though Officer Backstrom's shots had struck the Taurus, Adams was able to drive to the home of his mother, Bobbie Adams. Auburn Hills police issued a report regarding the Taurus. Pontiac, Michigan, police spotted the Taurus in front of Bobbie Adams's home. When police officers came to the back door of the home, Kevin Adams ran out the front door. Bobbie Adams told the officers that she had not seen her son, and she would not allow the officers to search the home. The officers set up surveillance at the house. Later that morning, Bobbie Adams allegedly consented to a search of her home. A yellow jacket that Kevin Adams reportedly wore at the motel was found inside the home. The police impounded the Taurus. Kevin Adams subsequently surrendered with his attorney.

The Oakland County Prosecutor's Office charged Adams with driving with a suspended license and assault with intent to do great bodily harm for attempting to run down Officer Backstrom. A jury convicted Adams on the suspended license charge but acquitted him on the assault charge.

*Adams I*, 336 F.3d at 516-17 (footnote omitted). The Adamses initially asserted claims against multiple parties for violation of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution. Ruling from the bench, the district court dismissed[2] the Fifth and Eighth Amendment claims, as well as the Fourteenth Amendment Due Process Clause claims, for failure to state a claim on which relief could be granted. As to the Fourth Amendment excessive-force and illegal-search claims, the district court dismissed those against the Auburn Hills Police Department for failure to state a claim on which relief could be granted. After concluding that the Adamses had not established a genuine issue of material fact as to either of two alleged official policies or customs (failure to train and inadequate screening), the district court granted summary judgment on the official-capacity claims against the various Auburn Hills officials. As to the individual-capacity excessive-force claims, the district court granted summary judgment to Chief of Police Doreen E.

---

[2]We use the terms dismissal or summary judgment as we believe intended by the district court.

3

Olko ("Olko"), Police Sergeant Glenn Heath ("Heath"), and Police Lieutenant David Chase ("Chase"). However, the district court denied summary judgment (including a denial of summary judgment on the basis of qualified immunity) on the individual-capacity excessive-force claim against Police Officer John Backstrom ("Backstrom"). As to the individual-capacity illegal-search claims, the district court granted summary judgment to all defendants.

Backstom filed an interlocutory appeal of the district court's denial of his assertion of qualified immunity. We reversed the district court's decision without reaching the issue of qualified immunity, concluding instead that Backstom's conduct did not constitute a Fourth Amendment violation. *Adams I*, 336 F.3d at 520. As Adams "ha[d] not alleged a constitutional violation to support a § 1983 claim," we concluded that "the question of whether Backstrom is entitled to qualified immunity is moot," and remanded the case to the district court for further proceedings. *Id.* On remand, the district court entered an order "dismiss[ing] this cause of action with prejudice." J.A. at 503 (Sept. 23, 2003 Order to Dismiss). In this appeal, the Adamses appear to contend that (1) the district court erred in granting qualified immunity on the individual-capacity claims against Olko, Heath, and Chase, and (2) the district court erred in granting qualified immunity to the officers for the search of the Adamses' home.[3]

---

[3]This litigating position rests on a misunderstanding of the district court's decision, which granted summary judgment to Olko, Heath, and Chase on the excessive-force claim, and to all defendants on the illegal-search claim, without reaching the issue of qualified immunity. *See* J.A. at 498-500 (March 13, 2002 Summ. J. Hr'g).

4

## II. ANALYSIS

### A. Jurisdiction

The district court had jurisdiction over this 42 U.S.C. § 1983 action pursuant to the general federal question statute, 28 U.S.C. § 1331. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

### B. Excessive-Force Claims

The excessive-force claims can be easily resolved. A prior panel of this court, in a published decision, concluded that Backstrom's conduct did not constitute excessive force in violation of the Fourth Amendment. *Adams I*, 336 F.3d at 520. The Adamses have not alleged any other instance of excessive force, only theories by which other defendants might be held liable for Backstrom's conduct. As the *Adams I* decision binds subsequent panels of this court, *see* 6th Cir. R. 206(c) ("Reported panel opinions are binding on subsequent panels. . . . Court en banc consideration is required to overrule a published opinion of the court."), we must affirm the district court's decision to dismiss the remaining excessive-force claims.

### C. Illegal-Search Claims

At the summary judgment hearing, the Adamses did not contest the City's position — repeated and clarified at the request of the district court — that none of the named defendants in this case participated in the search of the Adamses' home. *See, e.g.*, J.A. at 458, 464, 468, 478 (March 13, 2002 Summ. J. Hr'g). Instead of disputing this assertion, counsel for the Adamses merely responded:

> Oh, and with regard to these particular defendants and Bobbie Adams and what these particular defendants have to do with the search of Bobbie Adams' home or consent to search and any issues with regard to that, [it] should be noted that on the information provided, Lt. Chase sent the officers, and you can examine his

deposition testimony. He sent the officer to surveil and search Lt., I mean, excuse me, plaintiff Bobbie Adams' home.

So we do contend that the defendants, as named in this complaint, as well as people who did supervise these particular defendants, as named in this complaint, did participate in constitutional violations where Bobbie Adams is concerned.

J.A. at 490-91 (March 13, 2002 Summ. J. Hr'g). The district court specifically noted that none of the named defendants were involved in, or responsible for, the search of the Adamses' house. J.A. at 499 (March 13, 2002 Summ. J. Hr'g). On appeal, the entirety of the Adamses' argument on this issue reads as follows:

> The Fourth Amendment provides for the right of people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated (sic) and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
> The police entered Bobbie's home without consent or a warrant. The police outnumbered Bobbie and used tactics to intimidated (sic) and demean her. They searched her home twice and removed contents from her home without a warrant.
> These acts are clearly a violation of Bobbie's 4th amendment right and which (sic) the Defendants should not be granted immunity.

Adams Br. at 25-26. In its brief, the City again raised the absence of any direct involvement by any named defendants in this search. Auburn Hills Br. at 27. The Adamses did not file a reply brief. As it is clearly uncontested that no named defendants were directly involved in the search, and as the Adamses have pointed to no evidence suggesting that Heath made any improper instruction to those conducting the search, we must affirm the district court's decision to dismiss the illegal-search claim.

### III. CONCLUSION

We **AFFIRM** the judgment of the district court.

6