**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0988n.06
Filed: December 19, 2005

Consolidated Case Nos. 04-2263, 04-2264

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

SHARON MARION, PERSONAL REPRESENTATIVE
OF THE ESTATE OF JOSEPH BERRY, (04-2263)
EDWIN FLETCHER AND MARY FLETCHER, (04-2264)
 *Plaintiffs-Appellants,*

              On Appeal from the
    v.           United States District Court for
              the Western District of Michigan

WISCONSIN ELECTRIC POWER COMPANY,
 *Defendant-Appellee*.

_____/

Before: KEITH, KENNEDY, and BATCHELDER, Circuit Judges

 **Kennedy, J.** In this consolidated appeal, Plaintiffs Marion and Fletcher appeal from the district court's opinion granting summary judgment to Defendants. In that opinion, the district court held that the evidence relied on by Plaintiffs was not sufficient to support an action under the intentional tort exception to the exclusive remedy provided by the Michigan Worker's Disability Compensation Act, M.C.L. §§ 418.101-941. For the following reasons, we **AFFIRM** the district court.

**BACKGROUND**

 This case stems from an accident at Wisconsin Electric Power Company's (Defendant) Presque Isle coal fired electrical generation facility in Marquette, Michigan. This type of plant generates power by grinding coal into a fine powder and blowing the powder through duct work to

boilers. The coal heats water in the boilers into steam. The steam turns turbines, which generate electricity. Three of the plant's nine generating units use ball tube mills to crush coal. These units use Powder River Basin Coal, which can spontaneously ignite under the ambient conditions present in the power generation process. The highest risk of coal dust explosions occurs during start-up and shut-down. For this reason, the plant has strict procedures that it must follow to minimize the amount of excess coal in the ducts of the mills during these procedures. There is no definite way to gauge whether the ducts or the mills have been emptied, so the procedure at this facility calls for a mill to run for ten minutes at a steady stream of 91 decibels without adding any fuel before it is shut-down. According to the procedures, if, during the ten minutes, any decibel change takes place, the clock must restart and the mill must run for a continuous ten minute period at 91 decibels. During start-up and shut-down, plant personnel are prohibited from entering certain areas around the mill due to the heightened risk of an explosion.[1]

Plaintiffs were employed as maintenance mechanics at the facility. On December 27, 2001, the 8A mill system was taken out of service to allow for the replacement of an oil pump. To replace the oil pump, Plaintiffs had to enter a restricted area. The full shut-down procedure was not followed because an air fan stopped unexpectedly. This stoppage caused a premature shut-down of the mill. The mill only ran for approximately seven minutes, rather than the required ten minutes, at the appropriate decibel level. The system was not restarted to complete the shut-down procedure.

Plaintiffs entered the restricted area and replaced the oil pump. After completing their work, they exited the restricted area, and advised their supervisor that they had completed the repair. They then returned to the restricted area to clean their tools. They did not inform anyone that they were

---

[1]This opinion will refer to those areas as "restricted areas."

2

returning to the restricted area. The mill was restarted while they were in the restricted area and a coal dust explosion occurred. Joseph Berry was killed and Erwin Fletcher was severely injured and is now disabled.

The plant has a public address system. Under the start-up and shut-down procedures, an announcement must be made before a mill is started or stopped in order to alert workers to stay clear of the restricted area around the mill. An announcement was made on the public address system prior to the plant's starting up, but a later investigation revealed that the only speaker in the restricted area in which Plaintiffs were cleaning their tools was inoperative. The investigation concluded that the speaker had not been working for some time prior to the accident.

Although Plaintiffs' injuries are compensable under the Michigan Worker's Disability Compensation Act (MWDCA), M.C.L. §§ 418.101-941, Plaintiffs filed a tort suit against Defendant under the intentional tort exception to the MWDCA. After discovery, the district court granted Defendant summary judgment. Plaintiffs appealed.

## ANALYSIS

This court reviews a grant of summary judgment *de novo*. *Adams v. City of Auburn Hills*, 336 F.3d 515, 518 (6th Cir. 2003). For the purposes of this appeal, we construe the evidence in the light most favorable to Plaintiffs and draw all reasonable inferences in their favor. *Aiken v. City of Memphis*, 190 F.3d 753, 755 (6th Cir. 1999) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986)). Granting summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c).

3

The MWDCA provides an exclusive remedy for employees for injuries they suffer on the job. The only exception to this exclusive remedy is the intentional tort exception. M.C.L. § 418.131(1).[2] The Michigan Supreme Court interpreted the intentional tort exception in *Travis v. Dreis and Krump Mfg. Co.*, 551 N.W.2d 132, 143 (Mich.1996) and its companion case, *Golec v. Metal Exchange Corp.*, 551 N.W.2d 132, 143 (Mich.1996). *Travis* involved a woman who was injured when a press "double-cycled" and severely damaged her hands. *Travis*, 551 N.W.2d at 135-36. In addition, two of her fingers were amputated. *Id*. Her supervisor was aware that the press had the tendency to double cycle, but did not tell her of this possibility. *Id*. He believed that he had adjusted the press so that it would not double cycle. *See id*. *Golec* involved a man severely burned by molten metal that splashed on him after he was ordered to continue filling a furnace with scrap despite a previous splash and injury. *Golec*, 551 N.W.2d at 136-37. The Michigan Supreme Court found that Travis did not establish that an intentional injury had occurred, but that a material dispute of fact existed in *Golec* that required resolution by a fact-finder. *Id*. at 146-49.

In analyzing the MWDCA, the Michigan Supreme Court indicated that the intentional tort exception could be satisfied either through the proof of a "classic intentional tort," *Travis*, 551

_____

[2]M.C.L.A. 418.131(1) reads:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law.

N.W.2d at 143, or, "when there is no direct evidence of intent to injure, and intent must be proved with circumstantial evidence," *id*., through the satisfaction of a three-part test. That test required, first, did the employer have "actual knowledge" that an injury would occur? *Id.* Second, was that injury "certain to occur?" *Id.* Third, did the employer "willfully disregard[]" the risk to the employee? *Id.*

With regard to the first part of the test, the Michigan Supreme Court held that:

[b]ecause the Legislature was careful to use the term "actual knowledge," and not the less specific word "knowledge,". . . the Legislature meant that constructive, implied, or imputed knowledge is not enough. Nor is it sufficient to allege that the employer should have known, or had reason to believe, that injury was certain to occur. A plaintiff may establish a corporate employer's actual knowledge by showing that a supervisory or managerial employee had actual knowledge that an injury would follow from what the employer deliberately did or did not do.

*Travis*, 551 N.W.2d at 143. With regard to the second part of the test, the Michigan Supreme Court decided that:

[w]hen an injury is "certain" to occur, no doubt exists with regard to whether it will occur. Thus, the laws of probability, which set forth the odds that something will occur, play no part in determining the certainty of injury. Consequently, scientific proof that, for example, one out of ten persons will be injured if exposed to a particular risk, is insufficient to prove certainty. Along similar lines, just because something has happened before on occasion does not mean that it is certain to occur again. Likewise, just because something has never happened before is not proof that it is not certain to occur.

*Id.* (footnote omitted). Finally, with respect to the third part of the test, the Michigan Supreme Court held that:

[b]ecause the purpose of the entire second sentence is to establish the employer's intent, we find that the use of the term "willfully" in the second sentence is intended to underscore that the employer's act or failure to act must be more than mere negligence, that is, a failure to act to protect a person who might foreseeably be injured from an appreciable risk of harm. An employer is deemed to have possessed the requisite state of mind when it disregards actual knowledge that an injury is certain to occur.

5

*Id.* The court went on to hold that: " . . . the Legislature has permitted the employer's state of mind to be inferred from its actions when there is no direct evidence of the employer's intent to injure." *Id.*

In this case, Plaintiffs do not assert that their injuries were caused by a classic intentional tort, rather they assert that they have offered sufficient evidence under the Michigan Supreme Court's three-part test to survive summary judgment. We agree with the district court that Plaintiffs have not offered sufficient facts to raise a material question of fact as to any part of the test.

Defendant lacked "actual knowledge" that an explosion would occur. The evidence in the record indicates that an explosion was more likely to occur during start-up or shut-down and that the procedures were designed to minimize the possibility of an explosion. But, Plaintiffs do not offer any evidence that Defendant or its agents knew that an explosion would occur. Thus, Plaintiffs cannot show that Defendant possessed actual knowledge that an injury-causing explosion would occur in this case. The evidence in the record indicates that it was difficult if not impossible to predict when an explosion would occur. Such unpredictability precludes Defendant or its agents from having actual knowledge of an injury-causing explosion.

Furthermore, Plaintiffs cannot prove that injury was certain to occur. While it may be true that injury is certain to occur if people are present in a restricted area when a coal dust explosion occurs, the test established by the Michigan Supreme Court requires that Plaintiffs prove that an explosion or some other injury-causing event is certain to occur on start-up when the proper shut-down procedure was not followed, as occurred in this case. *Travis*, 551 N.W.2d at 143. Plaintiffs cannot prove that an explosion would occur on start-up every time that the shut-down procedure was not followed. *Id.* (explaining that "[w]hen an injury is "certain" to occur, no doubt exists with

6

regard to whether it will occur. Thus, the laws of probability, which set forth the odds that something will occur, play no part in determining the certainty of injury."). Thus, it cannot be said that Defendant or anyone working for Defendant knew that an explosion was certain to occur. *Cf. Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 496 (6th Cir. 2002) ("In the present case, the record provides no evidence that any of the individual defendants were certain that Tammy Sperle's murder was going to occur, even if we assume that Warden Jackson refused to make himself available to receive a warning concerning a danger to Tammy Sperle's life.")

Finally, Plaintiffs cannot prove that Defendant willfully disregarded a risk. Neither Defendant nor its agents were aware that Plaintiffs had returned to a restricted area. Like our recent decision in *Upsher v. Gross Pointe Pub. Sch. Sys.*, 285 F.3d 448, 455-56 (6th Cir. 2002), we find that this case is closer to *Travis* than it is to *Golec*, in part, because Plaintiffs were not ordered to continue working despite a demonstrable risk. Plaintiffs own testimony indicates that they returned to the restricted area after informing their supervisor that they were finished and without informing anyone before they returned. Plaintiffs argue that despite that fact, Defendant's alleged knowledge of the faulty public address system is enough to raise a triable issue of fact as to whether the injuries they suffered were intentional. We disagree. If Defendant did indeed start the mill with the knowledge that the public address system was faulty, such an act might be negligent, perhaps even grossly so, but it would not be intentional under Michigan law. *See id.* ("Here, however, even if we assume the asbestos-containing tiles constituted a "continuously operative dangerous condition," a fact we do not resolve, there is no evidence that any of the defendants *knew* this condition would cause injury and *refrained* from informing the plaintiffs. The supervisor in *Golec* ordered the plaintiff to return to work with full knowledge that the operating condition had recently resulted in

7

an injury-causing explosion. Here, the plaintiffs' proof shows merely that: (1) the defendants (and we note only some of the individually named defendants) knew of the general dangers associated with asbestos exposure; (2) the defendants did not provide adequate training regarding the proper method for removing asbestos-containing tiles; and (3) the defendants did not provide adequate protective devices such as clothing, air respirators, air monitoring, and the like. While the defendants' actions may have been negligent, or even grossly negligent, we conclude that the plaintiffs' proof fails to establish that the defendants had *actual knowledge* that injury was *certain to occur* and *willfully disregarded that knowledge.* The plaintiffs, therefore, are subject to the exclusive remedies provided under the MWDCA and may not recover in this action."). Because Plaintiffs fail to raise a material question of fact, summary judgment was appropriate.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.